PRICE, Judge.
This action arises out of an explosion of a gasoline pump occurring on October 7,1975, *1086 at White’s Grocery in Franklin Parish. The owner, Max C. White, filed suit against Exxon Corporation, Bo Equipment and Supply Co., Inc., John Myers Pump Service, Inc., and Aetna Casualty & Surety Company for property damage and loss of business income alleging that the explosion was caused by the negligent installation and maintenance of the pump.
John Myers Pump Service, Inc., and its insurer, Aetna, have appealed from the judgment of the trial court rendered in plaintiff’s favor which annulled a prior judgment of the court which had sustained a motion for summary judgment filed by these two defendants. We affirm for the reasons discussed hereafter.
The issue on appeal is whether the circumstances under which the summary judgment was rendered constitute “ill practices” to justify the annulment of the judgment under La.C.C.P. Art. 2004.
Plaintiff contends the judgment was obtained through ill practices based on the following chronology of events: Prior to the filing of the motion for summary judgment, a co-defendant, Bo Equipment, answered written interrogatories submitted to all defendants containing an inquiry as to who installed “the pump.” Bo Equipment promptly responded by admitting it had made the installation. John Myers and Aetna immediately filed their motion for summary judgment alleging there was no genuine issue of fact in so far as plaintiff’s action against them was concerned as Bo Equipment had admitted installing the defective pump, and as reflected by an attached affidavit of John Myers’ president, Jerry Wolff, no installation or service had been undertaken by it on the defective pump. The other co-defendant, Exxon, had not answered plaintiff’s interrogatories at this time.
No contradictory affidavit was filed by plaintiff, and the motion was therefore granted by the trial court dismissing the action against John Myers and Aetna.
Shortly thereafter, Exxon filed answers to plaintiff’s interrogatories in which it declared John Myers had installed the pump which had exploded. Bo Equipment then filed an amended answer to the interrogatories which declared it was confused as to which pump the interrogatory had referred, and denied it had installed the pump in question.
In his action to annul the summary judgment, plaintiff contends that the affidavit of John Myers’ president, Wolff, on which the court partially relied in granting the motion, was false in that Wolff asserted positively that he had examined the company records, and that from that examination and of his own personal knowledge, his company had not installed the pump in question. Plaintiff further contends that the effect of this affidavit when considered with the erroneous answer to the interrogatories by Bo Equipment, precluded plaintiff from obtaining accurate information as to which party was responsible for the negligent installation, and misled the court to conclude there was no genuine issue of fact which resulted in the sustaining of the motion for summary judgment. Plaintiff contends these circumstances warrant the finding of “ill practices” as provided by Art. 2004.
John Myers and Aetna contend that plaintiff’s remedy should have been by a timely appeal from the summary judgment, and that he should not be allowed to maintain an action of nullity based on defenses which should have been urged at the time of the hearing on the motion for summary judgment.
The record convinces us that plaintiff was misled into believing that there was no doubt as to who installed the pump, and that he had no reason to believe that this would later become a disputed fact until it was too late to file a counter affidavit or to appeal from the judgment.
On trial of the proceeding to annul it was shown that Wolff, although probably acting in good faith, did make an affidavit asserting as a positive fact that the pump in question was not installed by his company. It was further shown that this information was probably incorrect. Exxon produced *1087 invoices issued by John Myers showing the probability that such work was performed by them in 1970.
Wolff admitted in his testimony that his affidavit made in 1976 was based solely on his examination of available company records which did not show the 1970 invoices as no records are kept by the firm for more than five years.
The issue is whether the foregoing circumstances constitute “ill practices” within the meaning of C.C.P. Art. 2004 which provides:
A final judgment obtained by fraud or ill practices may be annulled. An action to annul a judgment on these grounds must be brought within one year of the discovery by the plaintiff in the nullity action of the fraud or ill practices.
Appropriate to the question here at issue is the discussion of the definition of an ill practice by the appellate court in Succession of Trouard, 281 So.2d 863 (La.App. 3rd Cir. 1973) as follows:
We agree with plaintiffs that the trial court has much discretion in determining whether a judgment should be annulled because of fraud or ill practices. Muller v. Michel Lecler, Inc., 266 So.2d 916 (La.App. 4th Cir. 1972). A judgment may be annulled on the ground of “ill practices,” even though no actual fraud or intentional wrong has been committed in the procurement of the judgment, if it is shown that the enforcement of the judgment would be unconscionable and inequitable and would deprive the litigant who seeks the annulment of legal rights to which he is entitled, [cites omitted]
The affidavit purportedly based on personal knowledge, when actually based on the absence of appropriate records, was improper and under the circumstances here presented has contributed to an inequitable result. It, therefore, should be considered an ill practice within the meaning of C.C.P. Art. 2004 entitling plaintiff to annul the summary judgment.
The judgment appealed is affirmed at appellant’s cost.