457 So.2d 1203 (1984)
Kenneth NEWFIELD
v.
William GRUBER and Frank Bua, d/b/a Food Factory, Inc.
No. 83-CA-0993.
Court of Appeal of Louisiana, First Circuit.
October 9, 1984.
*1204 John J. Burke, Fernand L. Laudumiey, III, New Orleans, for plaintiff, appellee.
Irving B. Shnaider, New Orleans, for defendants, appellants.
Before EDWARDS, SHORTESS and SAVOIE, JJ.
EDWARDS, Judge.
From a judgment dismissing a suit to annul a previously rendered judgment allegedly obtained through ill practices, plaintiffs appeal. We affirm.
John Burke confirmed a default judgment on February 24, 1981, in an action for unpaid wages filed a year earlier on February 21, 1980, on behalf of Kenneth Newfield against William Gruber and Frank Bua, doing business as Food Factory, Inc. Without moving for a new trial or appealing, Gruber and Bua instituted the present action to annul that judgment, which they allege was obtained through "ill practices" in violation of LSA-C.C.P. art. 2004.
At trial they attempted to prove that Mr. Burke entered the default judgment after entering into settlement negotiations with their attorney, James Conner, and agreeing not to take a default without first notifying Conner and giving him an opportunity to file a responsive pleading. The trial judge, unpersuaded by their evidence, dismissed their suit, ruling that they had failed to carry their burden of proof.
The primary issue on appeal is whether the trial judge erred in dismissing plaintiffs' suit. A secondary issue is whether the trial judge erroneously admitted hearsay testimony into evidence over the objection of their counsel.
Confirming a default without prior notice to the opposing counsel is not an ill practice under article 2004 unless plaintiff's attorney agrees to give his opponent notice before taking the default or leads him to believe notice will be given by pretending to negotiate a settlement. See Albert v. Lirette, 394 So.2d 761 (La.App. 4th Cir.1981) and cases cited therein.
But whether or not in this case Burke made the alleged agreements with Conner or misled him is a question of fact subject to the rule of Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Thus, in the absence of manifest error, the trial judge's finding that the plaintiffs failed to carry their burden should not be disturbed on appeal.
According to Burke, who testified at trial, of the five conversations he had with Conner before confirming the default, none of which were confirmed in writing, only *1205 the first concerned a settlement offer. The remaining four concerned Burke's repeated attempts to get Conner to file an answer.
In their first conversation, which took place before Christmas in 1979 shortly after Burke had sent Gruber and Bua a demand letter for Newfield's unpaid wages, Conner made a settlement offer of $500 in cash plus a $2700 unsecured promissory note in exchange for a release of Newfield's laborer's lien. Burke rejected this as unreasonable. In their second conversation, on or about February 15, Burke called to inform Conner that he was going to file suit, which he did on February 21, 1980.
Some time in late March, Conner called to inform Burke that he would be representing the defendants in the upcoming suit, but needed additional time to answer because of a scheduled knee operation. Burke agreed and asked Conner to call as soon as he was "back on his feet."
When he had not heard from him by April, Burke called Conner and requested him to file an answer. Conner assured him that he would, but in late June Burke called again and repeated his request because Conner had not yet filed any pleading. According to Burke, in this last communication Conner expressed dissatisfaction over not being paid anything for his services except a regular breakfast at Mandy's, the defendants' restaurant.
Burke did not hear from or contact Conner again until he entered a preliminary default on February 7, 1981.
Conner testified, on the other hand, that he and Burke had had several conversations about settlement possibilities, and that although nothing substantive materialized after Burke rejected the first offer, he did not file an answer because he thought negotiations were still under way. He insisted that Burke never requested him to file an answer, but he did not testify that Burke had specifically agreed to forbear from taking a default before giving him notice.
At the conclusion of the trial, the judge said,
We have a classic case here where nobody is producing any letters to each other.
* * * * * *
[The] Court finds it is just as likely the way Mr. Burke says it happened as the way Mr. Conner said it happened. In that case, Mr. Bua doesn't win this petition to annul the judgment.
We agree. The testimony above indicates perhaps careless office practices and miscommunication but it does not establish the kind of ill practice anticipated by article 2004. The trial judge's finding that the plaintiffs failed to carry their burden, based upon a reasonable evaluation of credibility, is not clearly erroneous.
As for the allegedly inadmissable hearsay, we have been unable to find, nor has appellants' counsel seen fit to show us, where in the record the error occurred. Counsel argues that the trial judge allowed Conner to testify over his objection about the substance of a conversation between Conner's secretary and Burke. The record in fact indicates just the opposite. Appellants' counsel himself attempted to elicit the hearsay testimony from Conner, but the trial judge sustained, not his, but his opponent's objection and ruled the testimony inadmissable.
We note that in both his direct and cross examinations Conner made several references to notes taken by his secretary concerning communications from Burke to Conner's office. The only objection to any of these references was the one made by appellee's counsel mentioned above. Since appellants made no objections at trial, they cannot make them now on appeal. Cf. Orgeron v. Sweatman, 367 So.2d 1199 (La. App. 4th Cir.1978).
For the foregoing reasons, the judgment of the trial court is affirmed at appellants' cost.
AFFIRMED.